IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
September 10, 2002 Session

## LLOYD E. FERRELL and DEBRA L. FERRELL v. STATE OF TENNESSEE

**Direct Appeal from the Circuit Court for Hardin County**
**No. PC7447     C. Creed McGinley, Judge**

**No. W2001-01465-CCA-R3-PC  - Filed November 22, 2002**

The Appellants, Lloyd E. Ferrell and Debra L. Ferrell, appeal the denial of post-conviction relief by the Hardin County Circuit Court.  On appeal, both contend that the post-conviction court erred by not finding ineffective assistance of counsel.  In addition, Debra Ferrell asserts: (1) that she should be granted a new trial because the State failed to provide *Brady*/*Bagley* material: (2) that the post-conviction court erred by not making written findings of fact on each issue raised in the petition, and (3) that the cumulative effect of all errors at trial, in addition to counsel's ineffectiveness, deprived her of a meaningful defense.  After review, we affirm the dismissal of the petitions.

**Tenn. R. App. P. 3; Judgment of the Circuit Court Affirmed.**

DAVID G. HAYES, J., delivered the opinion of the court, in which JOSEPH M. TIPTON and JOE G. RILEY, JJ., joined.

Vance W. Dennis, Savannah, Tennessee, for the Appellant, Lloyd E. Ferrell; Julie Bhattacharya Peak, Nashville, Tennessee, and David W. Willis, Clarksville, Tennessee, for the Appellant, Debra L. Ferrell.

Paul G. Summers, Attorney General and Reporter; Michael Moore, Solicitor General; P. Robin Dixon, Jr., Assistant Attorney General; G. Robert Radford, District Attorney General; and John W. Overton, Assistant District Attorney General, for the Appellee, State of Tennessee.

# OPINION

## Procedural History

The Appellants, husband and wife, were convicted of first degree felony murder for their involvement in an attempted robbery which led to the death of Hobert Ferrell, the Appellant Lloyd Ferrell's uncle. Testimony at trial established that the Appellant Lloyd Ferrell approached Jason Kimberland[1] about "making some easy money" by robbing the elderly Hobert and Mary Ferrell. Hobert Ferrell was reported to have kept large sums of money at his residence. Kimberland agreed and, on March 27, 1996, the Appellant Lloyd Ferrell met Kimberland at his apartment and drove him to the Hobert Ferrell residence. The plan, developed by the Appellant Lloyd Ferrell, required Kimberland to enter the back of the victim's residence with a gun, provided by the Appellant Lloyd Ferrell, tape up Hobert and Mary Ferrell, and rob them of their money. Kimberland was to then call Lloyd, who would pick him up at a pre-determined location. According to Kimberland, two phone conversations took place that morning. The first was from the Appellant Lloyd Ferrell to Kimberland to ensure that he was awake and ready. The second call was between Kimberland and the Appellant Debra Ferrell. Kimberland called to inform Lloyd that he would not be needing the ski mask, as he had located his. Kimberland testified that the Appellant Debra Ferrell told him that Lloyd was already gone and was bringing a gun for him and a ski mask.

The Appellant Lloyd Ferrell dropped Kimberland off near the victim's residence as planned; however, the plan went awry when Mary Ferrell spotted Kimberland outside the residence. When Kimberland burst through the door, he was met by Hobert Ferrell with a shotgun. Kimberland began firing the .380 pistol as he retreated out the door. The elder Ferrell was wounded and died from the injuries.

Kimberland was apprehended in the area by local police, and eventually confessed, implicating the Appellants. A recording device placed on the phone of Kimberland's girlfriend, Stacye Shands, revealed calls from Debra Ferrell, which implicated Mrs. Ferrell in the robbery.

The Appellants were convicted by a jury and following their direct appeal, both convictions were affirmed by a panel of this court. *See State v. Lloyd E. Ferrell and Debra L. Ferrell*, No. 02C01-9708-CC-00327 (Tenn. Crim. App. at Jackson, Nov. 23, 1998). On May 10, 2001, a petition for post-conviction relief was filed. The post-conviction court denied the Appellants' relief and this appeal followed.

---

[1]Kimberland was also charged with felony murder but was tried separately. Kimberland, who was convicted of felony murder and sentenced to life imprisonment, testified for the State at the Appellants' trial.

**<u>Analysis</u>**

In order to succeed on a post-conviction claim, the Appellants bear the burden of showing, by clear and convincing evidence, the allegations set forth in their petitions. Tenn. Code Ann. § 40-30-210(f) (1997 & Supp. 2001).

To succeed on a challenge of ineffective assistance of counsel, the Appellants must demonstrate that counsel's representation fell below the range of competence demanded of attorneys in criminal cases. *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). Under *Strickland v. Washington*, the Appellants must establish (1) deficient representation and (2) prejudice resulting from the deficiency. 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984). The petitioner is not entitled to the benefit of hindsight, may not second-guess a reasonably based trial strategy, and cannot criticize a sound, but unsuccessful, tactical decision made during the course of the proceeding. *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). This deference to the tactical decisions of trial counsel is dependent upon a showing that the decisions were made after adequate preparation. *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

The issues of deficient performance by counsel and possible prejudice to the defense are mixed questions of law and fact. *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). "[A] trial court's *findings of fact* underlying a claim of ineffective assistance of counsel are reviewed on appeal under a *de novo* standard, accompanied with a presumption that those findings are correct unless the preponderance of the evidence is otherwise." *Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001) (citing Tenn. R. App. P. 13(d); *Henley v. State*, 960 S.W.2d 572, 578 (Tenn. 1997)). However, *conclusions of law* are reviewed under a purely *de novo* standard, with no presumption of correctness. *Fields*, 40 S.W.3d at 458. Upon *de novo* review, accompanied by a presumption that the post-conviction court's findings are correct, this court must determine whether the Appellants received the effective assistance of counsel.

## I. Lloyd E. Ferrell

On appeal, the Appellant Lloyd E. Ferrell, contends that he received ineffective assistance of counsel. Specifically, he asserts that his trial counsel was ineffective in that he: (1) failed to adequately investigate and prepare for trial; (2) refused to present a valid alibi defense; and (3) failed to "adequately research and present to the court" a motion to have his case severed from that of the Appellant Debra Ferrell.

### A. Failure to investigate and prepare for trial

The Appellant specifically alleges that trial counsel's performance was substandard due to his failure to confer pre-trial with the Appellant about the case and by his failure to interview two witnesses. At the post-conviction hearing, the Appellant testified that trial counsel only met with him four times prior to trial to discuss the facts and potential theories of defense. With regard to this

assertion, the post-conviction court found that trial counsel "met with the [Appellant] on numerous occasions prior to the trial of this matter and fully discussed all relevant matters." Trial counsel testified to meetings in the McNairy and Decatur County Jails, meetings in the courthouse before each court appearance, and various telephone conversations with the Appellant. The Appellant himself acknowledged the meetings which occurred in the jails, as well as those before the various court appearances. The proof supports the post-conviction court's finding. This issue is without merit.

The Appellant also alleges that trial counsel's failure to interview potential witnesses, Justin Thomason and Terry Cromwell, rendered his representation deficient. The Appellant's assertion must fail. When a petitioner claims that trial counsel failed to interview or present a witness in support of his defense, the Appellant should present that witness at the evidentiary hearing. *Black v. State*, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990). Because the Appellant presented neither Jason Thomason nor Terry Cromwell, it would be speculative to conclude that their testimony would have affected the outcome of this case. This issue is without merit.

### B. Failure to present an alibi defense

The Appellant claims that trial counsel's failure to call alibi witnesses, the names of which the Appellant had provided, also constituted ineffective assistance of counsel. Specifically, the Appellant asserts that his two sons, Jonathan and Christopher Ferrell, and Justin Thomason should have been called to establish his presence in his home during the critical period in which Jason Kimberland alleged that the Appellant dropped him off at the crime scene.

Again, we find no merit to the Appellant's claim. The proof established that trial counsel did in fact interview the Appellant's two sons. From his testimony at the post-conviction hearing, it appears that what they told him at the time was not helpful in establishing an alibi for their father, despite the apparent change in their testimony at the post-conviction hearing. With regard to the alleged alibi witness, Justin Thomason, he was not called to testify at the post-conviction hearing, so we are unable to make a determination as to whether his testimony would have been favorable.

We agree with the post-conviction court's finding that trial counsel's decision not to call the witnesses and present an alibi defense under the facts as presented was a tactical decision. Accordingly, we find this assertion without merit.

### C. Severance

The Appellant's final contention is that trial counsel failed to present a written argument in support of his motion to sever the Appellant's trial from that of his wife's. The motion to sever was based on the admission of tape recorded phone conversations between the Appellant Debra Ferrell and Stacye Shands, in which Debra Ferrell made statements implicating both herself and her husband. The trial court denied the motion to sever.

In the direct appeal of this case, this court concluded that "those portions of the taped conversations implicating [Lloyd Ferrell] in the circumstances of the offense should not have been introduced. [We] must also conclude the trial court erred by not following one of the three [severance] procedures in Tenn. R. Crim. P. 14(c)(1)." *Lloyd E. Ferrell and Debra L. Ferrell*, No. 02C01-9708-CC-00327. However, this court held that even if it was error, it was clearly harmless error. *See* Tenn. R. App. P. 36(b).

Because this court found after consideration of the entire record that the error did not affect the judgment, no prejudice is shown. This issue is without merit.

## II. Debra L. Ferrell

On appeal, the Appellant Debra L. Ferrell alleges numerous grounds upon which she bases her claim of ineffectiveness. Specifically, she alleges that deficient performance resulted from: (1) presenting a "comparative guilt" defense when the State was pursuing criminal responsibility and conspiracy theories of guilt; (2) failure to disclose the nature and extent of trial counsel's disciplinary problems; (3) failure to investigate possible defenses; (4) failure to discover, interview, and present witnesses; (5) failure to object to inflammatory and prejudicial comments by the prosecutor during closing arguments; and (6) failure to seek a severance from her husband's case. The Appellant also alleges that she is entitled to a new trial because the State failed to disclose crucial *Brady/Bagley* evidence regarding a telephone conversation related at trial between the co-defendant Kimberland and herself. The Appellant further alleges that the trial court erred by failing to make written findings of fact on each of the Appellant's post-conviction issues. Lastly, the Appellant asserts that the cumulative effect of the individual errors, coupled with counsel's deficient performance, deprived her of a meaningful defense.

### A. Ineffective assistance of counsel

#### 1. "Comparative guilt" defense

The Appellant asserts that she was denied effective assistance of counsel by trial counsel's presentation of a "comparative guilt" theory of defense at trial. She characterizes the defense of "comparative guilt" as one in which her trial counsel attempted to argue that her guilt was extremely minimal in comparison to that of her co-defendant husband's. The Appellant argues that this defense was essentially no defense, as criminal liability is not measured in degrees or by comparison of guilt, but rather whether any culpability for the crime exists. After review, we find the Appellant's argument that this so-called defense of "comparative guilt" was utilized is simply incorrect.[2]

---

[2]Trial counsel's defense is illustrated in his closing argument to the jury:

Debra Ferrell was not involved in this. She didn't plan. She didn't participate. She didn't actively pursue it out. She didn't do anything. She might have heard something. She might have gained knowledge. She may have got something off the street or where ever. But she didn't plan it. She

(continued...)

We agree that the record supports the trial court's finding that trial counsel's strategy was not "ill-conceived or constitutionally defective." The strategy employed by trial counsel was developed after adequate preparation and was reasonable under the facts. We are not to "second-guess" the strategies and tactical choices made by trial counsel. *Hellard v. State*, 629 S.W.2d 4, 9 (Tenn. 1982). This issue is without merit.

## 2. Trial counsel's disciplinary problems

The Appellant contends that trial counsel's alleged failure to disclose the nature, scope, and degree of his suspension by the Board of Professional Responsibility adversely affected her decision to continue with counsel's representation, as well as adversely affecting his representation, so as to render it ineffective.

Prior to the Appellant's trial, trial counsel's authority to practice law was temporarily suspended by the Board of Professional Responsibility for various violations unrelated to this case, including: (1) neglect, (2) failure to properly remit funds, (3) failure to communicate with clients and the Board, (4) misrepresentations to the court, clients, and the Board, and (5) misappropriation of client funds. A hearing was conducted by the trial court for the express purpose of ensuring that the Appellant had knowledge of the nature of trial counsel's pending problems with the Board. At the hearing, trial counsel indicated in his statement to the trial court that he had "spoke[n] about this matter in depth" and "discussed it in some detail" with the Appellant. The Appellant indicated that trial counsel had indeed informed her of the problems. Nonetheless, she still wished to continue with him as counsel.[3]

The Appellant now contends that trial counsel misrepresented the magnitude of his disciplinary problems. She claims that she would have sought new counsel had she been told the full extent of the problems. The post-conviction court found that "[n]othing in the record remotely indicate[d] that any personal or disciplinary problems of the [Appellant's] counsel adversely affected his trial performance."

We agree that the Appellant has failed to establish any causal connection between trial counsel's disciplinary problems and/or suspended status and his representation of the Appellant at trial. The record indicates that the Appellant was informed of trial counsel's pending problems and elected to continue with his representation. This issue is without merit.

---

[2](...continued)
wasn't involved in it. She has no more to do with this than Stacye Shands [an unindicted State's witness]. She's not in on it.

[3]Trial counsel was ultimately suspended from the practice of law for a minimum period of five years.

### 3. Investigation of the case

The Appellant alleges that trial counsel made very little effort to contact or communicate with her prior to trial. The Appellant testified that only five meetings occurred with trial counsel, and of those, only three were specifically about the trial. The Appellant contends that this was an insufficient amount of time for trial counsel "to develop a rapport" with the Appellant and to "investigate, develop, and discover alternative theories of defense," including a defense of "battered wife syndrome." Moreover, the Appellant argues that trial counsel was deficient for failing to ascertain that she was a "battered wife."

At the post-conviction hearing, the Appellant presented evidence, including expert testimony, that she was a battered wife. The Appellant admitted that she did not inform trial counsel of this fact; but rather, she contends that he would have discovered it if he had spent more time with her. However, the record appears to be devoid of any objective criteria that would have alerted trial counsel to this fact.

Trial counsel logged numerous hours of investigation in this case, and the issue of spousal mistreatment never arose. Neither the Appellant, nor any family member, felt compelled to inform trial counsel of any marital problems or abuse during the pre-trial investigation. Trial counsel testified that during his investigation and meetings with the Appellant and her husband, they appeared to be very affectionate towards one another and there was no indication of fear or violence. Accordingly, we find this issue without merit.

### 4. Failure to discover, interview, or present witnesses

At trial, the State argued that the Appellants traded their car after the murder of the victim in order to conceal their involvement in the crime. The Appellant contends that trial counsel failed to present witnesses who would have testified that the reason their car was traded was because they wanted to buy their son a new truck, which had been planned for some time. The Appellant claims that her mother, sister, and son, if called at trial, would have rebutted the State's argument. However, when the witnesses testified at the post-conviction hearing, they were unclear as to when the decision was made to buy the son a truck. No witness could recall if the conversations took place before or after the murder.

Trial counsel testified to interviewing these witnesses and making a determination that their testimony would not be beneficial to the case. This decision was obviously a tactical decision. We cannot in hindsight say that the testimony would have benefitted the Appellant's cause. This issue is without merit.

### 5. Failure to object during closing argument

The Appellant next asserts that trial counsel failed to object or seek a curative instruction regarding improper and inflammatory remarks made by the prosecution during closing arguments. Specifically, the Appellant alleges that trial counsel should have objected to statements which: (1) alleged new crimes in the form of jury argument; (2) referred to the Appellant as the "brains behind the outfit," when the evidence didn't support such a statement; and (3) analogized the Appellant to a "cancer." Trial counsel testified that he made a tactical decision not to object to these statements because he felt that it would have been extremely damaging to the Appellant if the objections were overruled. Assuming for argument's sake that error occurred, no prejudice is shown, as the error did not affect the result of the trial on the merits. Tenn. R. Crim. P. 52(a).

### 6. Failure to seek severance

The Appellant's final contention with regard to ineffective assistance of counsel is that trial counsel failed to seek a severance of the Appellant's trial from that of her husband's. The Appellant argues that Tenn. R. Crim. P. 14(c)(2)(i) mandated a severance in this case in order "to promote a fair determination of the guilt or innocence of one or more defendants."

We note initially that trial counsel did in fact orally join in a motion for severance made by trial counsel for the Appellant Lloyd Ferrell. The Appellant contends that this was insufficient and did not fulfill trial counsel's obligation to "vigorously argue for severance."

The motion for severance was considered and denied by the trial court. On direct appeal, a panel of this court was "unable to conclude that a severance was necessary for a fair determination of [the Appellant's] guilt or innocence." Because we find trial counsel's performance was not deficient, we find this issue without merit.
.

### B. *Brady/Bagley* material

The Appellant argues that the State failed to provide the defense with *Bagley* material prior to trial. Specifically, the Appellant alleges that the State withheld a crucial statement made by Jason Kimberland implicating the Appellant, which was first related during Kimberland's testimony at the Appellant's trial. It is argued that none of the three prior written statements given by Kimberland, and delivered to the Appellant, made any reference to a phone conversation with the Appellant prior to the commission of the crimes.[4] However, Kimberland testified at trial that he had in fact spoken with the Appellant early that morning, and she made statements indicating her knowledge of the

---

[4]We are handicapped in our review of this issue due to the Appellant's failure to include in the record the three prior statements of Kimberland. As such, we are unable to determine whether in fact his trial testimony was at material variance with his prior statements. Moreover, there is nothing in the record which suggests that the prosecutor or law enforcement was aware of the substance of the Appellant's questioned testimony implicating the Appellant prior to its introduction at trial.

crime. Trial counsel, utilizing the three prior statements for impeachment purposes, cross-examined Kimberland in an attempt to establish the inconsistency in his testimony at trial.

The Appellant argues that Kimberland's testimony at trial falls within the scope of *Brady/Bagley* and should have been disclosed prior to trial. At the evidentiary hearing, the post-conviction court found Kimberland's testimony to be incriminatory and, thus, not controlled by the trilogy holdings of *Brady*, *Bagley*, and *Giglio*. We agree. To be entitled to relief under *Brady*, the Appellant must show: (1) the State suppressed the evidence; (2) the evidence must have been favorable to the accused; and (3) the evidence must have been material. *Brady v. Maryland*, 373 U.S. 83, 87, 83 S. Ct. 1194, 1196-97 (1963). The rule has also been extended to cover impeachment evidence. *U.S. v. Bagley*, 473 U.S. 667, 676, 105 S. Ct. 3375, 3380 (1985).

The Appellant's argument fails because the evidence she claims was withheld was not favorable evidence to her, nor was it impeachment evidence. The statement made at trial by Kimberland was clearly incriminatory, rather than exculpatory. Kimberland's prior statements, which the Appellant had received pre-trial, would be considered the impeaching evidence and indeed trial counsel utilized these statements for impeachment purposes during cross-examination.

### C. Cumulative errors and failure to make written findings of fact.

The Appellant argues that the cumulative effect of all the alleged errors deprived her of a meaningful defense. It is true that our court has held that cumulative error may in fact deprive a defendant of a fair and meaningful defense. *State v. Taylor*, 968 S.W.2d 900, 912 (Tenn. Crim. App. 1997). In furtherance of this holding, we have reviewed those issues in which error, albeit harmless error, was identified . After consideration of the entire record, we find that the cumulative effect of those individual errors did not deprive the Appellant of a meaningful defense. Accordingly, we find this issue without merit.

Lastly, the Appellant contends that the post-conviction court erred in failing to enter written or oral findings of fact with regard to several issues raised at the evidentiary hearing. We find it unnecessary to address this contention as only issues which implicate federal or state constitutional rights are cognizable in a post-conviction proceeding. The Appellant's issue addresses a statutory right. *See* Tenn. Code Ann. § 40-30-211 (1997). Moreover, the principal function of this statutory provision is "to facilitate appellate review of the lower court's proceedings." *State v. Swanson*, 680 S.W.2d 487, 489 (Tenn. Crim. App. 1984). For these reasons, this issue is without merit.

### CONCLUSION

In reviewing an ineffectiveness claim, we are required to consider the totality of the evidence presented at trial. *Strickland*, 466 U.S. at 695. Thus, we examine not only what trial counsel failed to do, but what counsel did do. As such, our focus is upon the adequacy or inadequacy of trial counsel's performance from counsel's perspective at the time, and not from the distorting effects of hindsight. *Id.* at 689. Moreover, our review is highly deferential. After review, we find that trial

counsel for the Appellants were functioning as "counsel guaranteed" the Appellants by the Sixth Amendment, and further find that the trial did not produce an unreliable or unjust result. Accordingly, the judgment of the post-conviction court denying relief to the Appellants, Lloyd E. Ferrell and Debra L. Ferrell, is affirmed.

 

_____

DAVID G. HAYES, JUDGE